UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
ANN ARBOR DIVISION

HOME POINT FINANCIAL
CORPORATION d/b/a HOMEPOINT,

      PLAINTIFF,

v.

TRANS UNITED FINANCIAL
SERVICES, INC.,

      DEFENDANT.

CASE NO. _____

## COMPLAINT

Plaintiff, Home Point Financial Corporation d/b/a Homepoint ("Homepoint"), states as follows for its Complaint against Defendant, Trans United Financial Services, Inc. ("Trans United"):

## PARTIES

1.    Homepoint is a New Jersey corporation, with its principal place of business in Ann Arbor, Michigan.

2.    Trans United is a California corporation, with its principal place of business in Tustin, California. Trans United may be served with process at its principal place of business, located at 17341 Irvine Blvd, Ste 150, Tustin, CA 92780.

3.      At all times relevant to this Complaint, Homepoint was in the business

of, among other things, purchasing and reselling residential mortgage loans on the

secondary mortgage market.

4.      At all times relevant to this Complaint, Trans United was engaged in

the business of originating, processing applications for, and preparing and arranging

the closing and funding of residential mortgage loans.

5.      On February 8, 2021, Homepoint and Trans United entered into a

contract entitled "Correspondent Mortgage Loan Purchase Agreement"

("Correspondent Agreement"), a true and correct copy of which is attached as

**Exhibit A** and incorporated herein by reference.

## JURISDICTION AND VENUE

6.      Section 21 of the Correspondent Agreement provides in pertinent part

that the parties "agree that any litigation arising out of or relating hereto or the

transactions and activities contemplated hereby shall be submitted or be brought in

Michigan. The parties hereto hereby agree to submit to the venue and jurisdiction of

the state courts of Washtenaw County, Michigan or the U.S. District Court for the

Eastern District of Michigan[.]"

7.      This Court has jurisdiction over Trans United because it has irrevocably

submitted to the jurisdiction in the Correspondent Agreement. Additionally, this

2

Court has jurisdiction over Trans United because it transacted business with Homepoint in the State of Michigan.

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Homepoint and Trans United are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.    Venue is proper in this Court pursuant to the terms of Correspondent Agreement.

## STATEMENT OF FACTS

### I.    The terms of the Correspondent Agreement

10.    The Correspondent Agreement provides that Homepoint "has, from time to time, published and updated its Guidelines and Correspondent Seller Guide for correspondent lending . . . which set forth additional representations, covenants, warranties and rights of the Parties and the contents of those are specifically incorporated in this Agreement." Ex. A at 1.

11.    Section 7 of the Correspondent Agreement provides, in pertinent part:

[Trans United] unequivocally and unconditionally represents and warrants to [Homepoint] and agrees as follows as of the date of this Agreement. These representations, warranties and agreements shall remain binding upon [Trans United] during the term of this Agreement:

. . .

B.    All Loan Packages and Closed Loans have been "originated," which is defined for purposes of this Agreement to mean conduct of the initial borrower interview and the obtaining of a completed Form 1003 Uniform Residential Loan Application by employees of [Trans United] licensed with the Nationwide Mortgage Licensing System ("NMLS") to originate residential mortgage loans for the appropriate state at the time the interview is conducted.  [Trans United] further represents and warrants that each Loan Package or Closed Loan sold to [Homepoint] meets the applicable underwriting and other product eligibility requirements established by [Homepoint] for the Loans.

C.    On all Loan Packages and Closed Loans, [Trans United] has complied with all provisions of the Seller Guide, the Guidelines, the Investor Guidelines, and all other covenants in this Agreement. [Trans United] has made full, truthful and accurate disclosure to [Homepoint] of all facts, information and documentation pertaining to its submission of any Loan Package or Closed Loan and is unaware, does not know or suspect, or have constructive notice of adverse circumstances or issues which could impact the integrity, salability or the ability of the Loans to be securitized by any agency or investor or which may otherwise have any bearing on [Homepoint's] decision to acquire the Loan Package or Closed Loan.

D.    All defects, errors, deviations, variations, irregularities and discrepancies, both actual and perceived, on all Loan Packages and Closed Loans have been fully and thoroughly investigated, resolved, cured and remediated by [Trans United] prior to submission to [Homepoint]. No conditions (including underwriting or closing conditions) or contingencies remain outstanding.

E.    The Loan Packages and Closed Loans submitted by [Trans United] to [Homepoint] do not contain any material or clerical errors, omissions, misrepresentations, untrue

4

statements, falsified or incomplete documents or exhibits, misleading explanations, negligence, identity theft, fraud, or evidence of illegal activity or similar misconduct by [Trans United], its officers, agents and employees, the borrowers, seller, realtor, appraiser, title company, settlement/closing agent, home Inspector, builder or any other party involved in the Loan. Any evidence or instance, actual or circumstantial, of the existence of any prohibited conduct on any Loan Package or Closed Loan, without regard to the time sequence of the date of discovery by [Homepoint], will result in the immediate issuance of a written repurchase demand, automatic termination of this Agreement and possible referral of any alleged civil or criminal misconduct to the appropriate authorities.

. . .

Q.    All Loans comply with all Investor Guidelines as defined above, and any other agency or Investor Guidelines, regulations, directives and programs, as applicable. The Closed Loans and Loan Packages are eligible for purchase and/or the issuance of insurance by the applicable investor or agency, and if applicable, are eligible for securitization by GNMA.

. . .

X.    The Loan was underwritten by [Trans United] in accordance with underwriting standards that are acceptable to Fannie Mae, Freddie Mac and GNMA, as applicable, and/or in accordance with [Homepoint's] guidelines in effect at the time the Loan was originated. Where applicable, the Loan was serviced in accordance with applicable Fannie Mae, Freddie Mac, FHA, VA, USDA and/or HUD requirements and industry standards. The Loan is saleable to Fannie Mae, Freddie Mac and GNMA, as applicable, on a non-recourse basis.  The Note

and Mortgage with respect to each Loan are on forms acceptable to Fannie Mae and Freddie Mac.

Y.    Where required under applicable Program Requirements, the Loan File with respect to each Loan contains an appraisal supporting the value of the related Mortgaged Property as stated in the Loan application and meeting all applicable legal, investor, and agency requirements . . . . Any appraisal and all appraisal practices used in originating the Loan (i) conform to the requirements of Fannie Mae and Freddie Mac and (ii) comply with the Appraiser Independence Requirements developed by Fannie Mae, Freddie Mac and the Federal Housing Finance Agency. . . .

12.    Section 8 of the Correspondent Agreement provides, in pertinent part:

A.    <u>Indemnification</u>: [Trans United] shall indemnify, defend, and hold harmless [Homepoint], its affiliates, directors, officers, agents, and employees, successors and/or assigns, from and against any and all damages, losses, liability, costs, actions, causes of action, judgments, claims, demands, regulatory agency or governmental proceedings or investigations, investor repurchase demands or sanctions, attorneys' fees, court costs or expenses both direct and indirect, arising out of or related to (I) [Trans United's] breach of any representation, warranty or covenant set forth in this Agreement; (II) [Trans United's] failure or omission to perform any obligation set forth in this Agreement; and (iii) any fraud (whether active fraud or fraudulent omission) or misrepresentation is found to exist in any Loan or any documents related to the Loan or utilized in any way during the origination process, in all actions brought by or involving third parties in which [Homepoint] has the right to be indemnified under this Paragraph, [Homepoint] shall have the complete and exclusive right to determine the conduct and defense of such legal proceeding or investigation with such third

6

party including, without limitation, the right to compromise, settle, defend or continue any such action.

13. Section 10 of the Correspondent Agreement provides, in pertinent part:

A. Repurchase Obligations, Notwithstanding any independent investigation or evaluation of a Loan by [Homepoint] prior to purchase, [Homepoint] may, in its sole and exclusive discretion, require [Trans United] to repurchase any Loan:

    i. That was underwritten by [Trans United] and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement, the Program Requirements or the Seller's Guide in effect as of the date that [Homepoint] purchased such Loan;

    ii. That was underwritten by [Trans United] and/or originated based on any materially inaccurate information or material misrepresentations made by a Borrower, or by [Trans United], [Trans United's] directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information relating to said Loan;

    OR

    iv. that must be repurchased from any secondary market investor (including but not limited to Fannie Mae, Freddie Mac, FHA, VA, HUD, GNMA or USDA) due to a breach by [Trans United] of any representation, warranty or covenant contained in this Agreement or a failure by [Trans United] to comply in all material respects with the applicable terms, conditions, requirements and procedures included in the Program Requirements or Seller's Guide. . .

    . . .

B.    Opportunity to Cure. [Trans United] will, upon notification by [Homepoint], correct or cure the defect identified by [Homepoint] with regard to a Loan within the time prescribed by [Homepoint] to the full and complete satisfaction of [Homepoint].  If, after receiving such notice from [Homepoint], [Trans United]  is unable to correct or cure such defect within the prescribed time, [Trans United] shall, at [Homepoint's] sole discretion, either (1) repurchase such defective Loan from [Homepoint] at the Repurchase Price, or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Purchase Price) as [Homepoint] may deem appropriate.  For this purpose, the "Repurchase Price" with regard to a defective Loan that is subject to repurchase under this section 10(b) means the sum of: (1) the unpaid principal balance of the Loan; (2) all accrued but unpaid interest due [Homepoint] the date of repurchase; (3) all expenses, including but not limited to reasonable attorneys' fees incurred by [Homepoint] in enforcing [Trans United's] obligation to repurchase such Loan; (4) any servicing expenses relating to the Loan, including any servicing advances made by [Homepoint] as servicer; and (5) any premiums paid to [Trans United] for purchase of the Loan. If [Homepoint]  requests a repurchase of a defective Loan, [Trans United] shall, within ten business days of [Trans United's] receipt of such repurchase request, pay to [Homepoint] the Repurchase Price by cashier's check or wire transfer of immediately available funds.

14.    Section 19 of the Correspondent Agreement provides, in pertinent part:

Equitable Relief. The remedies for a breach of the [Trans United]'s representations, warranties and covenants are unlimited both in law and equity at the sole and absolute discretion of [Homepoint], which may include, but is not limited to, injunctive relief on an ex parte basis to preserve

8

[Homepoint's] interests.  [Trans United] agrees that a breach of this Agreement shall result in irreparable harm to [Homepoint].

15.     Section 26 of the Correspondent Agreement provides, in pertinent part:

Attorneys' Fees and Costs. [Trans United] acknowledges that [Homepoint]       shall be entitled to recover all its reasonable attorneys' fees in the event that (a)  [Trans   United]   breaches   and Representation or Warranty set forth   herein,        (b) [Homepoint] is otherwise required to repurchase any Loan   pursuant  to  Section  10 hereof, and/or (c) [Homepoint] is required to             commence litigation to enforce any provision of this Agreement (in which  event, [Homepoint] shall also be entitled to recover court costs).

## II.     Trans United is obligated to repurchase three loans from Homepoint under the   Correspondent Agreement.

16.     On or about March 9, 2022, Homepoint purchased a mortgage loan concerning a property located at 6250 Hollywood Blvd, Unit #11L, Los Angeles, CA 90028, and identified as Homepoint Loan Number xxxxxx1861 ("Loan 1"), from Trans United under the Correspondent Agreement.

17.     On or about July 12, 2021, Homepoint purchased a mortgage loan concerning a property located at 389 Cliff Dr., Unit 7, Pasadena, CA 91107, and identified as Homepoint Loan Number xxxxxx4727 ("Loan 2"), from Trans United under the Correspondent Agreement.

18.     On or about June 21, 2022, Homepoint purchased a mortgage loan concerning a property located at 605 Myrtle St., Apt #C, Glendale, CA 91203, and

identified as Homepoint Loan Number xxxxx5908 ("Loan 3"), from Trans United under the Correspondent Agreement.

### A. Trans United is obligated to repurchase Loan 1 under the Correspondent Agreement.

19.     Pursuant to the Correspondent Agreement, Homepoint maintains the right to, in its sole and exclusive discretion, require Trans United to repurchase any loan not in conformity with the terms of the Correspondent Agreement or when Homepoint is required to repurchase any loan from a secondary market investor. *See* Ex. A at 12.

20.     Section 5701.3 of the Seller/Servicer Guide for Federal Home Loan Mortgage Corporation ("Freddie Mac") provides that a "project that is a Condominium Hotel or similar type of transient housing" is ineligible for sale to Freddie Mac, including a project where more than thirty-five (35%) of the square footage is used for commercial or non-residential space (**Section 5701.3(d)**), or a project in which the unit owner does not possess sole ownership of the common elements, including buildings, roads, parking, facilities, and amenities (**Section 5701.3(h)**).[1]

---

[1] These sections of Freddie Mac's Seller/Servicer Guide may be found at https://guide.freddiemac.com/app/guide/section/5701.3.

21. Freddie Mac demanded repurchase of the Loan because the Loan was in violation of the guidelines, standards and requirements referenced in the Correspondent Agreement and Freddie Mac's Seller/Servicer Guide.

22. Specifically, the property is a condominium unit ineligible for sale to Freddie Mac because the unit shares its building with a hotel that makes up more than thirty-five (35%) of the building's square footage. Furthermore, the condominium unit shares amenities with the hotel, including the rooftop pool/spa, lounge, dog park, and gym (the "Loan 1 Defects").

23. As a result of the Loan 1 Defects, Homepoint was forced to repurchase Loan 1 from Freddie Mac because it was not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and Freddie Mac's Seller/Servicer Guide.

24. Homepoint sent notice of the Loan 1 Defects to Trans United and demanded that Trans United cure the defects or repurchase Loan 1 as required under the terms of the Correspondent Agreement.

25. Despite Homepoint's notice and demand, Trans United failed to cure the Loan 1 Defects or repurchase Loan 1 as required under the terms of the Correspondent Agreement.

26.     As a result of its failure to cure the Loan 1 Defects or repurchase Loan 1, Trans United has breached the Correspondent Agreement and caused damage to Homepoint.

27.     Trans United's breaches of the Correspondent Agreement relating to Loan 1 have resulted in total amounts due to Homepoint in excess of $744,769.21, excluding interest, attorneys' fees, and other amounts Trans United owes to Homepoint.

**B.      Trans United is obligated to repurchase Loan 2 under the Correspondent Agreement.**

28.     Pursuant to the Correspondent Agreement, Homepoint maintains the right to, in its sole and exclusive discretion, require Trans United to repurchase any loan not in conformity with the terms of the Correspondent Agreement or when Homepoint is required to repurchase any loan from a secondary market investor. *See* Ex. A at 12.

29.     Homepoint was forced to repurchase Loan 2 from Federal National Mortgage Association ("Fannie Mae") because the appraisal submitted by Trans United did not meet the requirements of Fannie Mae's Program Requirements and/or Seller's Guide.

30.     Specifically, Fannie Mae found the appraisal unacceptable because it incorrectly applied appraisal adjustments, inaccurately reported comparable sales,

and used inappropriate comparable sales that had dissimilar locations, physical features, ages, and designs/appeal. These deficiencies violate Fannie Mae's Program Requirements and/or Seller's Guide, and trigger the repurchase obligation set forth in Section 10(A) of the Agreement (the "Loan 2 Defects").

31.     As a result of the Loan 2 Defects, Homepoint was forced to repurchase Loan 2 from Fannie Mae because it was not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and Fannie Mae's Program Requirements and/or Seller's Guide.

32.     Homepoint sent notice of the Loan 2 Defects to Trans United and demanded that Trans United cure the defects or repurchase Loan 2 as required under the terms of the Correspondent Agreement.

33.     Despite Homepoint's notice and demand, Trans United failed to cure the Loan 2 Defects or repurchase Loan 2 as required under the terms of the Correspondent Agreement.

34.     As a result of its failure to cure the Loan 2 Defects or repurchase Loan 2, Trans United has breached the Correspondent Agreement and caused damage to Homepoint.

35.     Trans United's breaches of the Correspondent Agreement relating to Loan 2 have resulted in total amounts due to Homepoint in excess of $472,978.15,

excluding interest, attorneys' fees, and other amounts Trans United owes to Homepoint.

### C. Trans United is obligated to repurchase Loan 3 under the Correspondent Agreement.

36.     Pursuant to the Correspondent Agreement, Homepoint maintains the right to, in its sole and exclusive discretion, require Trans United to repurchase any loan not in conformity with the terms of the Correspondent Agreement or when Homepoint is required to repurchase any loan from a secondary market investor. *See* Ex. A at 12.

37.     Homepoint was forced to repurchase Loan 3 from Fannie Mae because Trans United failed to verify borrower's income and assets pursuant to the Correspondent Agreement and Fannie Mae's Program Requirements and/or Seller's Guide.

38.     Specifically, Trans United failed to properly support and verify borrower's claimed income and employment, and the borrower had insufficient assets at the closing of the loan. These deficiencies violate Fannie Mae's Program Requirements and/or Seller's Guide, and trigger the repurchase obligation set forth in Section 10(A) of the Agreement (the "Loan 3 Defects").

39.     As a result of the Loan 3 Defects, Homepoint was forced to repurchase Loan 3 from Fannie Mae because it was not in conformity with the applicable

guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and Fannie Mae's Program Requirements and/or Seller's Guide.

40.     Homepoint sent notice of the Loan 3 Defects to Trans United and demanded that Trans United cure the defects or repurchase Loan 3 as required under the terms of the Correspondent Agreement and Fannie Mae's Program Requirements and/or Seller's Guide.

41.     Despite Homepoint's notice and demand, Trans United failed to cure the Loan 3 Defects or repurchase Loan 3 as required under the terms of the Correspondent Agreement.

42.     As a result of its failure to cure the Loan 3 Defects or repurchase Loan 3, Trans United has breached the Correspondent Agreement and caused damage to Homepoint.

43.     Trans United's breaches of the Correspondent Agreement relating to Loan 3 have resulted in total amounts due to Homepoint in excess of $462,902.26, excluding interest, attorneys' fees, and other amounts Trans United owes to Homepoint.

## COUNT I: BREACH OF CONTRACT – LOAN 1

44.     Homepoint incorporates all previous allegations contained in in this Complaint as if set forth fully herein.

45.     As set forth in greater detail above, Trans United is contractually obligated to repurchase from Homepoint any loan sold under the Correspondent Agreement which Homepoint was forced to repurchase from a secondary market investor or which is otherwise not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

46.     Homepoint was forced to repurchase Loan 1 from Freddie Mac because the Loan did not conform to the applicable guidelines, standards and requirements under the Correspondence Agreement and Freddie Mac's Seller Guide.

47.     Homepoint has sent all required notices and satisfied all conditions precedent to Trans United's performance under the Correspondent Agreement.

48.     Trans United breached the Correspondent Agreement when it delivered Loan 1 that failed to conform to the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and Freddie Mac's Seller Guide and subsequently refused to cure the Loan Defects or repurchase Loan 1.

49.     Trans United's breach of the Correspondent Agreement in relation to Loan 1 has caused Homepoint to incur damages in excess of $744,769.21, excluding interest, attorneys' fees, and other amounts Trans United owes to Homepoint.

50.     Pursuant to the terms of the Correspondent Agreement, Homepoint is entitled to indemnification from Trans United, and to recover its other damages, including reasonable attorneys' fees, expenses, and costs arising from Trans United's breaches of the Correspondent Agreement.

## COUNT II: BREACH OF CONTRACT – LOAN 2

51.     Homepoint incorporates all previous allegations contained in in this Complaint as if set forth fully herein.

52.     As set forth in greater detail above, Trans United is contractually obligated to repurchase from Homepoint any loan sold under the Correspondent Agreement which Homepoint was forced to repurchase from a secondary market investor or which is otherwise not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

53.     Homepoint was forced to repurchase Loan 2 from Fannie Mae because the loans did not conform to the applicable guidelines, standards and requirements in the Correspondent Agreement or Fannie Mae's Program Requirements and/or Seller Guide.

54.     Homepoint has sent all required notices and satisfied all conditions precedent to Trans United's performance under the Correspondent Agreement.

55. Trans United breached the Correspondent Agreement when it delivered Loan 2 that failed to conform to the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and Fannie Mae's Program Requirements and/or Seller's Guide and subsequently refused to cure the Loan Defects or repurchase Loan 2.

56. Trans United's breach of the Correspondent Agreement in relation to Loan 2 has caused Homepoint to incur damages in excess of $472,978.15, excluding interest, attorneys' fees, and other amounts Trans United owes to Homepoint.

57. Pursuant to the terms of the Correspondent Agreement, Homepoint is also entitled to indemnification from Trans United, and to recover its other damages, including reasonable attorneys' fees, expenses, and costs arising from Trans United's breaches of the Correspondent Agreement.

## COUNT III: BREACH OF CONTRACT – LOAN 3

58. Homepoint incorporates all previous allegations contained in in this Complaint as if set forth fully herein.

59. As set forth in greater detail above, Trans United is contractually obligated to repurchase from Homepoint any loan sold under the Correspondent Agreement which Homepoint was forced to repurchase from a secondary market investor or which is otherwise not in conformity with the applicable guidelines,

standards and requirements set forth and referenced in the Correspondent Agreement.

60.     Homepoint was forced to repurchase Loan 3 from Fannie Mae because Loan 3 did not conform to the applicable guidelines, standards and requirements under the Correspondent Agreement or Fannie Mae's Program Requirements and/or Seller Guide.

61.     Homepoint has sent all required notices and satisfied all conditions precedent to Trans United's performance under the Correspondent Agreement.

62.     Trans United breached the Correspondent Agreement when it delivered Loan 3 that failed to conform to the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and Fannie Mae's Program Requirements and/or Seller Guide and subsequently refused to cure the Loan Defects or repurchase Loan 3.

63.     Trans United's breach of the Correspondent Agreement in relation to Loan 3 has caused Homepoint to incur damages in excess of $462,902.26, excluding interest, attorneys' fees, and other amounts Trans United owes to Homepoint.

64.     Pursuant to the terms of the Correspondent Agreement, Homepoint is also entitled to indemnification from Trans United, and to recover its other damages,

including reasonable attorneys' fees, expenses, and costs arising from Trans United's breaches of the Correspondent Agreement.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Home Point Financial Corporation, asks that this Court enter judgment in its favor and against Defendant, Trans United Financial Services, Inc., for damages in an amount to be proven at trial, including but not limited to prejudgment interest through the date of judgment, post-judgment interest as provided by law, attorneys' fees, expenses, costs, and all other relief the Court may deem just and proper.

/s/Erik Johnson_____
Erik Johnson (P85017)
Plunkett Cooney
Attorneys for Plaintiff
38505 Woodward Ave Ste 100
Bloomfield Hills, MI 48304
Telephone: (248) 433-2311
Email: ejohnson@plunkettcooney.com

Neal Bailen
Corey J. Dunn
STITES & HARBISON PLLC
323 East Court Avenue
Jeffersonville, IN  47130
Telephone:  (812) 282-7566
Email:  nbailen@stites.com
           cdunn@stites.com

*Counsel for Home Point Financial Corporation*

Open.P1448.P1448.31333008-1